# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15 C 6134 |
| ) | |
| A SERGEANT FOR RIVERDALE POLICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On November 24, 2015, following a series of efforts by this Court to assist pro se prisoner plaintiff John Williams ("Williams") in pursuing his 42 U.S.C. § 1983 ("Section 1983") action that charged a deprivation of his constitutional rights -- efforts to which Williams consistently paid no heed[1] -- this Court issued a memorandum order (Dkt. No. 17) that, citing well-established Seventh Circuit caselaw, finally dismissed both Williams' Complaint and this action with prejudice. On November 30, demonstrating a level of diligence that had been totally lacking during the pendency of the case, Williams filed a handprinted document (Dkt. No. 20) captioned "Motion To Vacate, Set A Side or Reconsider Any Order Dismissing the Riverdale

---

[1] As the opening sentence in this Court's October 1, 2015 memorandum order (Dkt. No. 11) stated:

> It is difficult to understand how a pro se plaintiff who has filed a 42 U.S.C. § 1983 action that clearly states a deprivation of his constitutional rights can then proceed to pay less attention to his lawsuit than the judge to whom his case has been assigned.

Sergeant To Grant Leave to Re-Instate Riverdale Sergeant for Good Cause Shown"[2] (the "Motion").[3]

But as the ensuing discussion will reflect, the Motion is totally without merit. To that end, a brief review of the bidding is in order:

1. On July 12, 2013 Williams sustained the mistreatment described in this fashion in his Complaint ¶ 10:

> That on July 12, 2013 with out warrning the Rivedale police fired a shot at the plaintiff. These actions prompted the plaintiff to flee . . . as a resalt and consequence of the plaintiff fleeing . . . upon his apprehension the plaintiff was beaten and one sgt        as the plaintiff hands was cuffed he was repeatedly tazed with a hand tazer in the testicles by sgt        . I passed out from the pain.[4]

As the blank spaces in that recital reflect, at that point Williams was in full possession of all the facts required to state a Section 1983 claim except for the identity of the alleged constitutional miscreant.

2. Williams' current Motion ¶ 1 states:

> From the time that the plaintiff assult by Riverdale Sergeant, he was immediately tooken in to custody by Riverdale and sent down state to Illinois Department of Corrections Pinckeny C.C. within 7 days of his arrest.

---

[2] Here, as in all other places in this opinion where documents authored by Williams are quoted, the quotation is verbatim. Any errors are attributable to Williams himself, not to any typographical or other mistakes on the part of this Court's judicial assistant.

[3] No copy of the Motion was delivered to this Court in the ordinary course. It learned of the Motion's existence only through having obtained its periodic printout of all motions pending in cases assigned to, or previously assigned to, its calendar.

[4] [Footnote by this Court] This Court, as it has throughout the case, credits Williams' allegations -- but without, of course, making any factual findings.

Although Motion ¶ 2 goes on to state "The plaintiff remained in custody for (17) months without any opportunity to retrieveing the true identity of the sergeant," nothing prevented Williams' prompt institution of a Section 1983 action with the selfsame allegations that he ultimately set out in his Complaint in this case. Yet for no apparent reason Williams waited until July 10 of <u>this</u> <u>year</u> to file suit (just a few days short of two years after the incident that forms the gravamen of his claim).

3. On July 15, 2015, just a few days after Williams' lawsuit papers arrived in the Clerk's Office, copies of the Complaint and its accompanying In Forma Pauperis Application ("Application") were delivered to this Court's chambers. This Court immediately reviewed the papers and issued a July 15 memorandum order (Dkt. No. 6) that (a) granted the Application and (b) transmitted to Williams copies of another Clerk's-Office-supplied form, the Motion for Attorney Representation, for him to complete and submit (although Williams had checked off, in the Application form, the statement that it was "in support of my motion for appointment of counsel," he had not included any such motion in his papers).

4. With a full four weeks thereafter having elapsed without <u>any</u> response from Williams, this Court issued a brief sua sponte August 14 memorandum order (Dkt. No. 8) that once again sent him copies of the Motion for Attorney Representation to be completed and returned so that

Williams could have the necessary assistance of a lawyer to pursue his action, with that August 14 memorandum order concluding in this fashion:

> If the required papers have not been received here on or before September 11, 2015, this Court would be constrained to dismiss this action for want of prosecution.

5. Another month passed without this Court receiving any response at all from Williams. With such apparent total silence on Williams' part, it is scarcely surprising that on September 15 this Court issued another brief one-page memorandum order (Dkt. No. 9) that referred to the earlier July 15 and August 14 orders and concluded:

> With September 11 having come and gone without any response from Williams, no reason appears to justify any further extension. As forecast in Order II,[5] this action is indeed dismissed for want of prosecution.

6. As it turned out, however, this time Williams had in fact prepared and transmitted a response, received in the Clerk's Office just a day after the September 15 dismissal. As this Court stated in its ensuing October 1 memorandum order (Dkt. No. 11):

> But just a day later the Clerk's Office received from Williams a completed form of Motion for Attorney Representation that reported his having communicated with a single law firm to seek representation but stated nothing as to why that contact had been unsuccessful or as to any other efforts he had made.

Despite the substantive inadequacy of that submission and the fact that it had been prepared and sent by Williams after the September 11 deadline

---

[5] [Footnote by this Court] "Order II" refers to the earlier-described August 14, 2015 memorandum order.

date, this Court (a) vacated the dismissal of the action for want of prosecution, (b) obtained the name of a member of the District Court trial bar to represent Williams and (c) issued this Court's customary scheduling order.

7. That however proved to be only a temporary reprieve for Williams, for after the designated counsel had looked into the matter thoroughly he moved to withdraw, filing the civil case equivalent of an <u>Anders</u> motion. This Court looked into the issue independently and issued the initially-referred-to November 24 memorandum order (Dkt. No. 17) that found that our Court of Appeals' consistent teaching has been that Fed. R. Civ. P. 15(c) does not permit the relation back of any amendment to a complaint that seeks to identify an originally unidentified defendant, so that "the untimeliness of this action in limitations terms is both incontrovertible and incurable." And that being so, the November 24 memorandum order dismissed both the Complaint and this action, this time with prejudice.

It is painfully obvious that Williams' wound in suffering the loss of his lawsuit is totally self-inflicted. None of the things said in his current Motion provide any predicate for equitable tolling or other relief from the result inexorably reached by this Court. Accordingly the Motion (Dkt. No. 20) is denied.

_____
Milton I. Shadur
December 18, 2015            Senior United States District Judge